425-429, Inc. Liquor License Case.

Argued March 28, 1955. Before RHODES, P. J., HIRT, ROSS, WRIGHT, WOODSIDE, and ERVIN, JJ. (GUNTHER, J., absent).

*Henry A. Frye,* for appellant.

*Stanley M. Greenberg,* with him *Bernard S. Ochman,* for appellees.

*Russell C. Wismer,* Special Deputy Attorney General, *Horace A. Segelbaum,* Deputy Attorney General, and *Herbert B. Cohen,* Attorney General, for Pennsylvania Liquor Control Board, intervenor, submitted a brief.

OPINION BY ROSS, J., July 21, 1955:

This is an appeal involving the transfer of a restaurant liquor license to premises located 60 feet from the appellant religious institution.

Early in 1953 the appellee corporation purchased a restaurant liquor license and applied to the Pennsylvania Liquor Control Board for the transfer to premises located at 425-429 Spring Garden Street, Philadelphia. The two principal shareholders of the corporation operate, at this location, a restaurant. They are both men of excellent character and reputation and their restaurant is operated in an exemplary manner. The appellant filed a protest to the transfer and a hearing on the matter was held before an examiner for the Liquor Control Board. The Board on the basis of this testimony refused the transfer, finding: "1. The premises proposed to be licensed are within 300 feet of the following institutions: The Wesley Hall Methodist Home for Transient Men, the Fifth Street Community Center, the Community Christian Mission, the Friends Neighborhood Guild Playground Extension, St. Vladimir's Russian Orthodox Church, the Church of the Advent, Roman Emanuel Baptist Church and the Non-Denominational Church of God."

Appellee then appealed to the Court of Quarter Sessions, which held a complete hearing de novo, made *additional* findings of fact *without changing* those as found by the Board concerning the religious institutions, and concluded that the Board had abused its administrative discretion. It thereupon ordered the license transferred to the premises of appellee and this appeal followed.

At the hearing de novo before the lower court there were substantially the same witnesses as had testified before the board, and admittedly the testimony was practically identical in all material respects. The testimony on behalf of the appellee came from 31 witnesses whose major theme concerned the good character of the appellee, and the need for a gracious place to dine and drink. Testimony on behalf of protestant-appellant concerned the nature of its work, the number and types of persons aided, as well as the detrimental effect such transfer would have upon these people and its work.

The function of the court of quarter sessions is delineated by the Liquor Code in section 464. "The Court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved . . ." Act of April 12, 1951, P. L. 90, Art. IV, section 464, 47 PS sec. 4-464. Recently in *Her-Bell, Inc. Liquor License Case,* 176 Pa. Superior Ct. 206, 107 A. 2d 572, at page 209, we cited with approval the language and holding of the *Booker Hotel Corporation Liquor License Case,* 175 Pa. Superior Ct. 89, 103 A. 2d 486 (allocatur refused) at pages 92-93: "It was not for the court below to substitute its discretion on the same facts as found by the Board. On such facts it was for the court to determine whether the Board had abused its administrative discretion. . . . The court of quarter sessions is not authorized to exercise *adminis-*

*trative discretion;* this is vested in the Board. As said in Hotchkiss Liquor License Case, 169 Pa. Superior Ct. 506, 511, 83 A. 2d 398, 400, 'There is a marked distinction between a court substituting its judicial discretion for a bureau's administrative discretion and a court, in the exercise of its judicial discretion, finding a bureau guilty of an abuse of its administrative discretion.' "

The additional facts found by the court below do not disturb in any way the basic finding made by the board that there are a number of religious institutions within 300 feet of the proposed premises. Instead, its findings concern the reputation of the owners of appellee, the need in the neighborhood for a respectable eating place which serves liquor, and the conclusion that the proposed transfer would not adversely affect the welfare, health, peace or morals of those affected by it. Despite the fact that the court then concluded that the board abused its administrative discretion, in effect its action was nothing more than a substitution of its own discretion on the same basic facts as found by the board. This, of course, is clearly prohibited by the *Booker Hotel* case, supra.

The legislature has provided under section 4-404 of the Liquor Code: ". . . That in the case of any new license or the transfer of any license to a new location the Board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground. . . ." This administrative discretion is specifically given to the Board; hence in the *Her-Bell* case we said at page 210: "Where any church is within three hundred feet of the place proposed to be licensed by a transfer, the Board may in its discretion refuse such transfer under §4-404 of the Code, 47 PS §4-404. The

exercise of the Board's discretion is not contingent upon the existence of a protest by the restrictive institution. Haase Liquor License Case, 175 Pa. Superior Ct. 618, 106 A. 2d 865. . . . 'the existence of a church within the prescribed distance would *in itself* be sufficient ground *upon which to base the Board's refusal.'* " (Emphasis supplied.) In other words, the legislature determined as a matter of policy that when one of the enumerated institutions is within the 300 feet, that alone, without any other evidence concerning reputation of the parties, the need in the neighborhood for a respectable place to dine, etc., is sufficient upon which to base a refusal to grant or transfer a license. If, however, the board is convinced that these and other factors are present and that the licensing would not be detrimental to the welfare, health, peace and morals of the neighborhood including the peace and welfare of the religious institution, then it may, in *its* discretion, allow the transfer. Here the board obviously was not convinced of this, hence it refused the transfer, as the legislators had authorized it to, on the basis of distance. Since no new facts were developed at the hearing de novo before the court below, there could be no conclusion reached other than that as reached by the board.

The Board, in reaching its conclusion, did not abuse its discretion. In *Mielcuszny v. Rosol,* 317 Pa. 91, 176 A. 236, it is stated at pages 93-94: "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or illwill, as shown by the evidence or the record, discretion is abused." Admittedly there was no bias or prejudice involved here. Furthermore, under the "three hundred foot" provision of the Liquor Code it cannot be

said that the law has been overridden or misapplied, for appellant is but 60 feet away from the premises. Nor indeed has the Board's judgment been exercised in a manifestly unreasonable manner since under the *Her-Bell* case the existence of a church within the prescribed distance *alone* is sufficient basis for the refusal of the transfer.

Appellee's argument that five of the religious institutions appeared on behalf of the appellee's transfer is of no avail. There were other religious institutions within the prescribed distance and protests were filed on their behalf. "The discretion granted by the Legislature is to the board and the court and not to the restrictive institution." *Haase Liquor License Case,* supra, 175 Pa. Superior Ct. 618, 621, 106 A. 2d 865. Whether the restrictive institutions believe that no detrimental effects will come of the transfer is a matter which can be considered by the board in exercising its discretion, but it is, of course, not conclusive or binding upon it.

We recognize that administrative discretion must be subject to judicial scrutiny or it will no longer be discretion but tyranny. *Hotchkiss Liquor License Case,* 169 Pa. Superior Ct. 506, 511, 83 A. 2d 398. However, there must be a clear abuse of administrative discretion before our courts are authorized to set aside the action taken by an administrative board. In a situation as in the instant case, we are faced with a clear manifestation by the legislature declaring that when the proposed premises are located within three hundred feet of a restrictive institution, extreme caution must be exercised by the board in granting or refusing the license or transfer. It has placed a clear and distinct warning signal in the Code itself. The legislative policy under these circumstances is not, as appel-

lee contends, that where the applicant is of good repute and the premises meet the requirements of the Code, the board must issue the license or grant a transfer despite the fact that it is within 300 feet of a church. Were that the legislative criterion, it would have been superfluous to write into the Code the 300-foot provision, for the requirements as asserted by appellee are basic for the issuance or transfer of any license irrespective of its proximity to churches, schools, etc. Clearly, the policy of the legislature was to discourage the sale of liquor in close proximity to the restrictive institution and we must therefore interpret the provisions of the Act in a light most favorable to the accomplishment of that purpose. Act of April 12, 1951, P. L. 90, Art. I, sec 104(a), 47 PS sec. 1-104(a). *DiRocco Liquor License Case,* 167 Pa. Superior Ct. 381, 383, 74 A. 2d 501.

Appellant has raised the additional question of res judicata on this appeal. A year previous to the instant proceeding the appellee purchased another license and applied for its transfer to the premises involved here. It was refused by both the board and the court below on appeal. Application was made for a rehearing at that time but was dropped without prejudice when the license involved was transferred by the seller to some other location. In view of our disposition of this matter on the other issues it is, of course, unnecessary for us to decide this question. We are of the opinion, however, that the doctrine of res judicata is not appliable to this situation. The Liquor Code makes no restriction regarding the number of times a person may apply for a transfer, despite the fact that it fully and in great detail encompasses the field of liquor licensing and regulation. Had the legislature intended that there be a limit on the applications, so basic a matter, it would have so provided.

The order of the court below is reversed, costs to be paid by appellee.

ERVIN, J., dissents.

---

DISSENTING OPINION BY ERVIN, J.

This is an appeal from the order of the lower court allowing the transfer of a restaurant liquor license to premises located within 300 feet from a religious institution. I am obliged to dissent from the majority opinion.

It is true that in *Azarewicz Liquor License Case,* 163 Pa. Superior Ct. 459, 461, 62 A. 2d 78, this Court said: "No court on appeal has power to review that discretion, except upon making new and different findings of fact." In that case we also clearly held that the discretion to grant or refuse a license within 300 feet of a restrictive institution was vested solely in the board. That case was decided under the Liquor Control Act then in force, which provided that "The court shall hear the application de novo at such time as it shall fix, of which notice shall be given to the board." At the session of the legislature next following that opinion, the language was materially changed to read as follows: "The court shall hear the application de novo *on questions of fact, administrative discretion and such other matters as are involved,* at such time as it shall fix, of which notice shall be given to the board." (Emphasis added) Act of May 20, 1949, P.L. 1551, §2. The language used by the legislature in 1949 was repeated in the Liquor Code, 1951, April 12, P.L. 90, art. IV, §464, 47 PS §4-464.

A review of our opinions since the 1949 change in language will reveal that we have not determined the importance of this change. In the *Hotchkiss Liquor Li-*

*cense Case,* 169 Pa. Superior Ct. 506, 83 A. 2d 398, we
held that the lower court did not substitute its discre-
tion for that of the Liquor Control Board. The 1949
change in language was not really considered in that
opinion. The court referred to the *Azarewicz* case, su-
pra, as well as to *Niedzinsky Post 624, American Le-
gion, License,* 66 D. & C. 618, both of which were de-
cided prior to the 1949 change. In *Burrell I.B.P.O.E.
of W. 737, Liquor License Case,* 172 Pa. Superior Ct.
346, 94 A. 2d 110, we held that the board had abused its
discretion but we did not really consider the effect of
the 1949 change in language. In that case we referred
to the *Hotchkiss* case, supra, which, in turn, was based
upon the *Azarewicz* case, supra. In *Zermani Liquor
License Case,* 173 Pa. Superior Ct. 428, 98 A. 2d 645,
we referred to the *Burrell* and *Hotchkiss* cases, which,
in turn, were based upon the *Azarewicz* case. In *Zelt-
ner Liquor License Case,* 174 Pa. Superior Ct. 98, 100
A. 2d 132, we held that there was no discretion to be
exercised inasmuch as the quota had been filled and
we did not really consider the effect of the new lan-
guage. In *Rizzo Liquor License Case,* 174 Pa. Superior
Ct. 457, 101 A. 2d 180, we held that the board had not
abused its discretion. Again we did not consider the
effect of the new language. We referred to the *Burrell*
and *Zermani* cases which, in turn, were based upon
the *Azarewicz* case. In *Booker Hotel Corp. Liquor Li-
cense Case,* 175 Pa. Superior Ct. 89, 103 A. 2d 486, it
was argued that the court below erred in not exercising
its own independent discretion following the hearing
de novo. The lower court in that case sustained the
action of the Liquor Control Board in refusing the
transfer of a hotel liquor license within 300 feet of the
land upon which Girard College is located, finding
that the board did not abuse its discretion. We also
found that there was no abuse of discretion by the

board or court. It is true that in that opinion we stated: "It was not for the court below to substitute its discretion on the same facts as found by the board. On such facts it was for the court to determine whether the board had abused its administrative discretion." But again this Court did not really consider the important change in language used by the legislature in 1949 and 1951. We were satisfied to trace our reasoning back through the various cases to the *Azarewicz* case, supra.

It is true that in the *Her-Bell, Inc. Liquor License Case,* 176 Pa. Superior Ct. 206, 107 A. 2d 572, the language used in the *Booker Hotel* case was cited with approval. I concurred in the result because the lower court sustained the action of the board and found that there was no abuse of discretion. I could not agree completely with the opinion because of the language: "The court of quarter sessions is not authorized to exercise administrative discretion; this is vested in the board." This conclusion was founded upon the *Hotchkiss* case, which in turn was based upon the *Azarewicz* case, which in turn was decided before the 1949 change in language by the legislature.

Nowhere has this Court squarely met the real issue. Why did the legislature change the language as it did in 1949? Up to now we have failed to answer that question. Is it because the question cannot be answered with the same result as heretofore?

I am convinced, after thorough consideration of the language used by the legislature in 1949 and repeated in 1951, i.e., "The court shall hear the application de novo *on questions of fact, administrative discretion and such other matters as are involved. . ."* (emphasis added), that the legislature intended the court on appeal to have administrative discretion to determine whether or not the application should be granted. If

the legislature had intended that the board have exclusive administrative discretion, it certainly would have permitted the language to stand as it was prior to the 1949 change. We must assume that the legislature was familiar with our decision in the *Azarewicz* case filed November 9, 1948. No other reasonable or logical conclusion can be reached. It is not for the courts to determine this important question of public policy. It is rather for us to give effect to the intention of the legislature when that intention has been clearly expressed.[1]

Aside from the logic of the situation it seems to me that the local court of quarter sessions could be trusted to exercise administrative discretion just as well or even better than could the members of the board who frequently come from other parts of the state and who could not be expected to be as familiar with local conditions as are the judges of the county involved. So long as the judges are brought into the matter at all, it seems to me that they might just as well be given the power to do a complete job.

I would affirm the order of the lower court.

---

[1] Professor Clark Byse, of the University of Penna. Law School, has written a splendid article on this subject entitled "Opportunity to be heard in License Issuance." See Pa. L.R. Vol. 101, No. 1, October, 1952, and particularly pages 82 to 87 incl. dealing with the Pennsylvania problem. In this article he states the "weighty practical reasons for not making courts super-licensing agencies." As stated in the opinion, however, this is a matter of policy for the determination of the Legislature.