Giant Food Stores, LLC,        :
              Appellant    :
                        :
          v.             :
                        :   No. 1310 C.D. 2016
Penn Township          :   Argued: May 3, 2017

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE JULIA K. HEARTHWAY, Judge

OPINION BY
JUDGE COVEY                 FILED: July 18, 2017

Giant Food Stores, LLC (Giant) appeals from the Chester County Common Pleas Court's (trial court) June 23, 2016 order granting Penn Township's (Township) motion to quash (Motion) Giant's appeal from the Township's denial of Giant's request for an intermunicipal transfer of a restaurant liquor license (License). There are two issues before this Court:[1] (1) whether the trial court erred by quashing an appeal brought under the Local Agency Law;[2] and, (2) whether the trial court erred by concluding that Giant's appeal was premature, and that Giant must first submit an intermunicipal transfer application to the Pennsylvania Liquor Control Board (PLCB) without the statutorily-mandated municipal approval, and then appeal from the

---

[1] Giant raised a third issue in its brief: whether the trial court erred in failing to consider that its decision would insulate municipalities from review of arbitrary and capricious decisions. However, that issue is subsumed in this Court's discussion of Giant's other two issues.

[2] 2 Pa.C.S. §§ 551-555, 751-754.

PLCB's denial of the application under the Pennsylvania Liquor Code.[3] After review, we reverse and remand for further proceedings.[4]

By February 26, 2016 letter, Giant notified the Township that Giant had entered into an agreement to purchase the License. Giant requested the Township's approval to transfer the License from Tredyffrin Township to the Giant store located in the Township at 849 West Baltimore Street.

To transfer a liquor license into a municipality which has exceeded its statutory liquor license quota, as occurred in the present case, Section 461(b.3) of the Liquor Code,[5] requires an application to be accompanied by the receiving municipality's resolution or ordinance approving the transfer. On April 6, 2016, in accordance with Section 461(b.3) of the Liquor Code, the Township's Board of Supervisors (Board) held a hearing on Giant's transfer request. Giant presented testimony detailing its plans to operate a restaurant at the grocery store and sell beer for on-premises and off-premises consumption. Thereafter, the Board invited public comment. The **only resident in attendance** at the hearing commented:

> I have been around a while. All I want to do is address the Township. I sat on that Board for 36 years and we here in [the] Township kind of have our roots in the Quaker tradition and beer sales and things of that nature kind of come hard to the old residents, which I'm one.
>
> And so just a thought – the only thing that comes to mind in creating this restaurant or package store is the fact that the parking in the Giant right now is overwhelming because there is a tremendous amount of business in Giant. I go there quite regularly and when I go it's hard to find a parking place. I'm 86 years old, so trying to get around sometimes is not exactly what you young guys are able to do, but to walk from the Giant to my car sometimes – if I

---

[3] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 – 10-1001.
[4] The PLCB and the Malt Beverage Distributors Association filed amicus briefs.
[5] Added by Section 9 of the Act of December 20, 2000, P.L. 992, *as amended*, 47 P.S. § 4-461(b.3)

2

can find a parking space, and this is the truth, it's normally packed. And if you come [on] the holidays, or anything like that, there is no parking. It's overwhelming.

It's not only the Giant that does a good business, but most of the businesses in that shopping center are attended, so it's a good business, and I think that the Giant has a wonderful business there, and they really don't need a package store to create more problems out in the parking lot.

Reproduced Record (R.R.) at 32a-33a. The Board concluded the hearing and, later that day, adopted a resolution denying Giant's transfer request.[6]

Notwithstanding that Section 461(b.3) of the Liquor Code provides no right of appeal from a municipality's denial of a liquor license transfer, on April 22, 2016, Giant appealed from the Board's decision to the trial court under the Local Agency Law, which does authorize appeals from local agency adjudications even where a statute explicitly denies such right.

On May 6, 2016, the Township filed its Motion. On June 23, 2016, the trial court granted the Motion and quashed Giant's appeal as premature. Specifically, the trial court held that Giant must apply to the PLCB to transfer the License without first obtaining the necessary municipal approval, wait for the PLCB to deny the application, and then appeal from the PLCB's decision pursuant to Section 464 of the Liquor Code,[7] which authorizes appeals from PLCB decisions to the trial court. Giant appealed to this Court.[8]

---

[6] The Board's chairman abstained from voting on the application "[s]o as to avoid any appearance of conflict of interest," since his family owns a liquor license in the Township. R.R. at 39a.

[7] 47 P.S. § 4-464.

[8] "This Court's standard of review of the trial court's order granting a motion to quash plaintiff's appeal is limited to whether the trial court committed an error of law, an abuse of discretion, or a violation of constitutional rights." *Ray v. Brookville Area Sch. Dist*., 19 A.3d 29, 31 n.3 (Pa. Cmwlth. 2011).

3

Giant first argues that the trial court erred by granting the Township's Motion because Giant's appeal was filed under the Local Agency Law. We agree.

Section 461(b.3) of the Liquor Code states:

> An intermunicipal transfer of a license or issuance of a license for economic development under subsection (b.1)(2)(i) **must first be approved by the governing body of the receiving municipality** when the total number of existing restaurant liquor licenses and eating place retail dispenser licenses in the receiving municipality equal or exceed one license per three thousand inhabitants. **Upon request for approval of an intermunicipal transfer of a license** . . . by an applicant, **at least one public hearing shall be held by the municipal governing body for the purpose of receiving comments and recommendations of interested individuals residing within the municipality concerning the applicant's intent to transfer a license into the municipality** . . . . **The governing body shall, within forty-five days of a request for approval, render a decision by ordinance or resolution to approve or disapprove the applicant's request for an intermunicipal transfer of a license** . . . . **The municipality may approve the request.** *A decision by the governing body of the municipality to deny the request may not be appealed.* A copy of the approval must be submitted with the license application. . . . . Failure by the governing body of the municipality to render a decision within forty-five days of the applicant's request for approval shall be deemed an approval of the application in terms as presented unless the governing body has notified the applicant in writing of their election for an extension of time not to exceed sixty days. Failure by the governing body of the municipality to render a decision within the extended time period shall be deemed an approval of the application in terms as presented.

47 P.S. § 4-461(b.3) (bold and italic emphasis added).[9]

---

[9] Section 461(b.3) of the Liquor Code was amended to its current form by Section 2 of the Act of November 29, 2006, P.L. 1421. Prior thereto, that section stated:

> An intermunicipal transfer of a license or issuance of a license for economic development under subsection (b.1)(2)(i) must first be approved by the governing body of the receiving municipality when

Although Giant agrees that the Liquor Code expressly prohibits an appeal from the Township's denial of its intermunicipal liquor license transfer application, it contends that it may appeal from that denial under the Local Agency Law, in accordance with our Supreme Court's decision in *Maritime Management, Inc. v. Pennsylvania Liquor Control Board*, 611 A.2d 202 (Pa. 1992).

Section 751 of the Local Agency Law provides:

> **(a) General rule.--**Except as provided in subsection (b), **this subchapter shall apply to all local agencies regardless of the fact that a statute expressly provides that there shall be no appeal from an adjudication of an agency, or that the adjudication of an agency shall be final or conclusive, or shall not be subject to review.**
>
> **(b) Exception.--**The provisions of this subchapter shall apply to any adjudication which under any existing statute may be appealed to a court of record, but only to the extent not inconsistent with such statute.

2 Pa.C.S. § 751 (text emphasis added). Section 752 of the Local Agency Law states:

> the total number of existing restaurant liquor licenses and eating place retail dispenser licenses in the receiving municipality exceed one license per three thousand inhabitants. Upon request for approval of an intermunicipal transfer of a license . . . by an applicant, at least one public hearing shall be held by the municipal governing body for the purpose of receiving comments and recommendations of interested individuals residing within the municipality concerning the applicant's intent to transfer a license into the municipality . . . . The governing body shall, within forty-five days of a request for approval, render a decision by ordinance or resolution to approve or disapprove the applicant's request for an intermunicipal transfer of a license . . . . **The municipality must approve the request unless it finds that doing so would adversely affect the welfare, health, peace and morals of the municipality or its residents.** *A decision by the governing body of the municipality to deny the request may be appealed to the court of common pleas in the county in which the municipality is located.* A copy of the approval must be submitted with the license application.

*Formerly* 47 P.S. § 4-461(b.3) (bold and italic emphasis added).

> Any person aggrieved by an **adjudication** of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa.C.S. § 752 (emphasis added).[10]

In *Maritime Management*, a steamship company applied for a public service liquor license. The PLCB refused the application, holding that the granting of the license would negatively impact the neighboring communities. The applicant appealed to this Court pursuant to the Administrative Agency Law.[11] The township filed a motion to quash the appeal, citing Section 408(b) of the Liquor Code, which provides:

> For the purpose of considering an application by a steamship or airline company for a public service liquor license, the [PLCB] may cause an inspection of the steamship or vessel or aircraft for which a license is desired. The [PLCB] may, in its discretion, grant or refuse the license applied for and **there shall be no appeal from its decision,** except that an action of mandamus may be brought against the [PLCB] in the manner provided by law.

---

[10] This Court explained:

> Article V, Section 9 of the Pennsylvania Constitution provides (with emphasis added):
>
> > *There shall be a right of appeal in all cases* to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or *from an administrative agency to a court of record* or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.
>
> Although this provision is not self-executing, the Local Agency Law was enacted to implement the appeal rights from local agencies set forth in the State Constitution.

*DeLuca v. Hazleton Police Dep't*, 144 A.3d 266, 277 (Pa. Cmwlth. 2016).

[11] 2 Pa.C.S. §§ 501-508, 701-704.

6

47 P.S. § 4-408(b) (emphasis added). This Court granted the motion to quash. On appeal, the Supreme Court reversed this Court, relying on Sections 701(a) and 702 of the Administrative Agency Law.[12] Our Supreme Court held:

> It is well established that the right of appeal set forth in the Administrative Agency Law, 2 Pa.C.S. §§ 701(a), 702 exists **separately from, and *in addition to***, any right of appeal provided in the Liquor Code. *Application of Family Style Rest*[.]*, Inc.,* . . . 468 A.2d 1088, 1090 ([Pa.] 1983) ('[T]he Administrative Agency Law provides a right of appeal in addition to that provided by the Liquor Code. . . .'); *Application of El Rancho Grande, Inc.,* . . . 437 A.2d 1150 ([Pa.] 1981).

*Mar. Mgmt., Inc.*, 611 A.2d at 204 (bold and italic emphasis added). The *Maritime Management* Court concluded:

> [A]s recognized in *Family Style Restaurant* and *El Rancho Grande,* **provisions in the Liquor Code disallowing appeals do not bar appeals taken under the Administrative Agency Law, 2 Pa.C.S. §§ 701(a), 702.**
>
> We find no merit in the contention of the PLCB that Section 4–408(b) [sic] of the Liquor Code . . . was intended by the legislature to supersede the right of appeal set forth in the Administrative Agency Law. Although the Liquor Code was reenacted by the legislature on June 29, 1987, and the Administrative Agency Law provisions in question, 2 Pa.C.S. §§ 701(a), 702 were enacted prior thereto, on April 28, 1978, there is no basis for belief that the legislature intended the Liquor Code to, in effect, repeal the Administrative Agency Law insofar as rights to appeal are concerned.
>
> When two statutes are in conflict, the one most recently enacted is ordinarily the one that must prevail. *See* 1 Pa.C.S. § 1936 ('Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment

_____

[12] Sections 701(a) and 702(a) of the Administrative Agency Law are identical to Sections 751(a) and 752 of the Local Agency Law, except for their application to administrative agencies rather than local agencies.

7

shall prevail.'). Such a conflict is not present in this case, however, for the two statutes in question are applicable to entirely separate subject matters. **The Liquor Code addresses appeals that can be brought *under* the Code, while the Administrative Agency Law sets forth a separate, additional, right of appeal. The latter statute clearly provides that it shall override any other law that prohibits an appeal, to wit, that an appeal shall be allowed 'regardless of the fact that a statute expressly provides that there shall be no appeal,' 2 Pa.C.S. § 701(a), supra. Thus, the Administrative Agency Law expressly contemplates that other statutes will differ insofar as appellate rights are concerned, and it expresses explicit legislative intent that it shall prevail.**

. . . .

**In short, although the Liquor Code did not provide a basis for the appeal taken by Maritime, the appeal was nevertheless proper under the statutory rights of appeal found in the Administrative Agency Law** . . . .

*Mar. Mgmt*, 611 A.2d at 204-05 (bold emphasis added).[13]

---

[13] Although *Maritime Management* involved an appeal from the PLCB's decision denying the public service liquor license application, and the instant appeal is from the Township's decision denying approval of an intermunicipal liquor license transfer, both cases involve Liquor Code provisions which expressly deny a right to appeal from an agency decision.

Importantly, like the Supreme Court's holding in *Maritime Management,* this Court has held that the Local Agency Law provides a right to appeal from a **local agency** decision even where an appeal from the agency decision is not expressly granted or is otherwise prohibited. In *DeLuca v. Hazleton Police Department,* 144 A.3d 266 (Pa. Cmwlth. 2016), a towing business was suspended from a municipality's towing rotation pursuant to the municipality's towing policy for alleged misconduct. This Court held that the towing business was entitled to appeal from the municipality's decision under the Local Agency Law despite the towing policy's provision that there was no recourse from a suspension other than through civil litigation. In *Bray v. McKeesport Housing Authority*, 114 A.3d 442 (Pa. Cmwlth. 2015), this Court, *en banc*, explained:

> [Although relevant] provisions do not expressly set forth a right to further appeal, such is not determinative in deciding whether judicial review is available under the Local Agency Law because that 'law was enacted to provide a forum for the enforcement of statutory rights where no procedure otherwise exists.' *Guthrie* [*v. Wilkinsburg*], 478 A.2d [1279,] 1283 [(Pa. 1984)] (internal quotation marks omitted). **In fact, even if appeals of adjudications expressly were not**

8

Notwithstanding, the Township contends that *Maritime Management* is inapplicable to the instant matter because the Township's decision denying the intermunicipal liquor license transfer request is not an adjudication. We disagree.

In *SSEN, Inc. v. Borough Council of Eddystone*, 810 A.2d 200 (Pa. Cmwlth. 2002), **an *en banc* panel of this Court explicitly acknowledged that a township's decision denying an intermunicipal liquor license transfer under Section 461(b.3) of the Liquor Code *is an adjudication*.** Therein, this Court affirmed a trial court's order sustaining the applicant's appeal from the borough's refusal to approve an intermunicipal liquor license transfer application. Referencing the nature of the appeal from the borough's denial, this Court stated: "[W]e are dealing with **an appeal from an adjudication of a local agency**[.]" *SSEN, Inc.*, 810 A.2d at 206 (emphasis added); *see also Boston Concessions Grp., Inc. v. Logan Twp. Bd. of Supervisors*, 815 A.2d 8 (Pa. Cmwlth. 2002). Although Section 461(b.3) of the Liquor Code was thereafter amended to remove the right to appeal under the Liquor Code, that change did not alter the **nature** of the Township's decision.[14] Specifically, the statutory provision denying the right to appeal from the Township's decision does not define *what that decision is*.[15] Thus, as this Court has explicitly

---

**permitted, the Local Agency Law would nevertheless apply and provide a right to appeal.**

*Bray*, 114 A.3d at 454 (emphasis added).

[14] Similarly, the replacement of the statutory provision mandating municipal approval absent evidence of community harm with the current provision that permits the Township to approve or deny the license transfer request does not change the nature of the municipal decision itself.

[15] Prior to the amendment, a municipality's decision could be appealed pursuant to the Liquor Code under former Section 461(b.3) of the Liquor Code. It follows, then, that the matter being appealed was an adjudication, as recognized in *SSEN, Inc*. Notably, the Liquor Code still requires at least one public hearing and a decision by ordinance or resolution.

In an analogous context, "when [a] city council passes a resolution approving a conditional use application, [the] council is acting in its administrative, not its legislative, capacity, and such a resolution is an adjudication for purposes of appeal." *City Council of City of Pittsburgh v. City of Pittsburgh*, 625 A.2d 138, 141 n.2 (Pa. Cmwlth. 1993).

9

stated, a municipal denial under Section 461(b.3) of the Liquor Code is an adjudication.

This conclusion is further supported by Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101, the Liquor Code, and case law. Section 101 of the Administrative Agency Law defines "[a]djudication" as:

> Any **final order, decree, decision, determination or ruling** by an agency **affecting personal or property rights, privileges, immunities, duties, liabilities or obligations** of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

2 Pa.C.S. § 101 (emphasis added). Section 468(d) of the Liquor Code provides that a "license shall constitute a privilege between the [PLCB] and the **licensee.** As between the licensee and third parties, the license **shall constitute property**." 47 P.S. § 4-468(d) (emphasis added).[16]

The Township contends that Giant is not a licensee and, therefore, there is no privilege at issue. The Township further asserts that, since license approval by the PLCB is not automatic, Giant's interest is merely speculative. Finally, the Township maintains that "the property interest in this matter is between Giant and [the current licensee.]" Township's Br. at 14.

The record reflects that Giant has entered into a contract with the current license holder to purchase the License.[17] Based on Section 468 of the Liquor Code,

---

[16] The dissent ignores this Liquor Code provision when it states, "I do not see how [the] Township's decision to deny the intermunicipal transfer in this matter 'affect[ed]' a personal or property right, privilege, immunity, duty, liability, or obligation of Giant." Dissenting Op. at 2 (quoting 2 Pa. C.S. § 101). Here, Giant entered into a contract to purchase the License. Pursuant to Section 468 of the Liquor Code, the License is property as between the licensee and Giant.

[17] Black's Law Dictionary defines "contract" as "[a]n agreement between two or more parties creating **obligations** that are enforceable or otherwise recognizable at law[.]" *Black's Law Dictionary* 365 (9th ed. 2009) (emphasis added).

10

**the License is property** as between Giant and the current licensee. The Township's denial, therefore, "affect[s] . . . property rights" and Giant's "duties, liabilities [and] **obligations**" because it **affects** the contract for Giant's purchase of the License from the licensee. 2 Pa.C.S. § 101 (emphasis added).[18]

The Township's contention that Giant's interest is purely speculative is also unconvincing. At the time *SSEN, Inc.* was decided, PLCB approval was similarly "not automatic." Rather, in addition to the municipality's right to deny approval where a license would be harmful to the welfare, health, peace and morals of the municipality or its residents, the PLCB could deny approval for any reason set forth in the Liquor Code.[19] The *SSEN, Inc.* Court still characterized the municipality's decision as an adjudication. [20]

---

[18] The dissent claims that "Giant acquired only that which the law recognizes – i.e., a restaurant liquor license in *Tredyffrin Township*. Penn Township's decision denying the request to transfer did not in any way adversely affect that property right." Dissenting Op. at 5. Although the dissent focuses on the License's current location in Tredyffrin Township, the PLCB approves and issues liquor licenses **by county** which licenses may be transferred within a municipality with PLCB approval, and **may also be transferred between the county's municipalities with municipal approval**. *See* 47 P.S. § 4-468; 47 P.S. § 4-461(b.3). Where municipal approval is denied, the property right is **affected**, despite that the license may theoretically be used elsewhere and, thus, is not rendered entirely valueless. Prior to the Township's decision, the License had the potential to be transferred anywhere within the county. After the Township's decision, the area for its possible use has been diminished. Hence, the License **is** affected.

[19] The dissent claims that the uncertainty of the necessary municipal approval undermines any legitimate claim to the License and, accordingly, demonstrates that no property interest exists. However, even the necessary approvals in *SSEN* would seem to similarly relegate the *SSEN* applicant to the status of having "'an abstract need or desire for' the transfer of the [License.]" Dissenting Op. at 4 (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Notwithstanding, this Court concluded that the municipality's decision was an adjudication.

[20] The dissent charges that "[b]y relying on and applying *SSEN*, decided under the pre-amendment version of Section 461(b.3) [of the Liquor Code], the majority tacitly, and . . . improperly, dismisses the General Assembly's subsequent legislative action as a nonevent." Dissenting Op. at 3. The dissent is incorrect. Herein, the majority specifically examined amended Section 461(b.3) of the Liquor Code, and reviewed *SSEN* to determine the applicability of the Local Agency Law which expressly permits appeals thereunder even where another statute explicitly prohibits appeals.

It is well-established that "[u]nder Pennsylvania law, '[w]hen an agency's decision or refusal to act leaves a complainant with no other forum in which to assert his or her rights, privileges or immunities, the agency's act is an adjudication.'" *Bray v. McKeesport Hous. Auth.*, 114 A.3d 442, 454 (Pa. Cmwlth. 2015) (quoting *Montessori Reg'l Charter Sch. v. Millcreek Twp. Sch. Dist.*, 55 A.3d 196, 201 (Pa. Cmwlth. 2012)). Here, the Township's decision left Giant with "no other forum in which to assert [its] rights, privileges or immunities[,]" because it could not challenge the Township's denial. *Id.* Although Giant could apply to the PLCB for the License transfer, **without the statutorily-mandated prerequisite municipal approval, Giant's application** would be **fatally flawed**, and the PLCB would be statutorily-mandated to reject it. Further, even if the PLCB held a hearing on the application under Section 464 of the Liquor Code, it has no authority to review the Township's decision.[21] Thus, absent the right to appeal under the Local Agency Law, the Township's decision would be insulated from **any** review. Such unfettered discretion would permit a municipality to deny an intermunicipal transfer of a liquor license for any reason, even an unlawful one. For example, there would be no right to review a municipality's decision if the municipality routinely denied such license applications to women on the basis of their sex, or to applicants based on their race, national origin, religion or other protected classification.[22] The General Assembly

_____

[21] "Section 464 [of the Liquor Code], by its own terms, does not apply to local agency decisions, and was not amended to include appeals from local agency decisions within its purview." *SSEN, Inc.*, 810 A.2d at 206.

[22] The dissent states that the amendment to Section 461(b.3) of the Liquor Code represents the General Assembly's "clear inten[tion] to reserve to local municipalities and their elected officials the exclusive right to either accept or reject intermunicipal transfers of liquor licenses above their allotted quota as they see fit, so long as the statutory process is followed." Dissenting Op. at 3. The majority agrees that the statute reflects the General Assembly's intention that local government should decide this local issue. However, the General Assembly also promulgated the Local Agency Law which provides for review even where a statute denies a right to appeal. Thus, the General Assembly clearly intended that local agency adjudications may not remain isolated and

could not have intended to permit a municipality to exercise such unfettered discretion, and, thus, provided a check on the municipality's authority through the Local Agency Law.[23]  For all of the above reasons, we conclude that Giant was entitled to pursue an appeal from the Township's decision under the Local Agency Law.[24]

Giant next contends that the trial court erred when it concluded that Giant's appeal was premature, and that Giant must first submit an intermunicipal liquor license transfer application to the PLCB without the statutorily-mandated

insulated from any review, especially where such decisions may be improperly impacted by abuses of discretion or motivated by unlawful discrimination.

We are aware that a discriminatory municipal decision may be attacked collaterally in an action under Section 1983 of Title 42 of the United States Code.  We cannot presume that the General Assembly intended that to be the only manner to ensure a municipality's compliance with the law when rendering a decision on an intermunicipal liquor license transfer.

[23] The dissent maintains that the amendment of Section 461(b.3) of the Liquor Code "removed any language that purported to create any right to a favorable decision and removed all standards against which a court could review an adverse decision for legality."  Dissenting Op. at 4.  Based on that premise, the dissent concludes that such municipal decisions are no longer adjudications.  However, such a conclusion is inconsistent with our Supreme Court's decision in *Maritime Management*.  There, the Court specifically allowed an appeal under the Administrative Agency Law from a PLCB denial of a public service liquor license application, despite the relevant Liquor Code section permitting the PLCB, without specified standards, to "'in its discretion, grant or refuse the license applied for'" and expressly prohibiting an appeal from that decision.  *Id.* at 203 (quoting 47 P.S. § 4-408(b)).  The dissent does not explain how, in any relevant manner, the PLCB's decision in *Maritime Management* differs from the Township's decision herein.  In fact, the dissent does not even acknowledge our Supreme Court's decision in *Maritime Management*, wherein the Court treated the decision as an adjudication.

[24] This Opinion is consistent with our Supreme Court's recent decision in *Pittman v. Pennsylvania Board of Probation & Parole*, 159 A.3d 466 (Pa. 2017), wherein, the Court expressed its strong skepticism of statutory interpretation which denies appellate review of an administrative body's decision, even where the administrative body exercises the "broadest of discretion[.]"  *Id.* at 474.  The Pennsylvania Board of Probation & Parole (PBPP) argued that "the [PBPP] has broad discretion in deciding whether to grant a [convicted parole violator] credit; there are no standards by which an appellate court can evaluate the [PBPP's] exercise of discretion; and the [PBPP] is not required to provide a contemporaneous statement of reasons explaining its decision."  *Id.* at 473.  Notwithstanding the lack of such standards, our Supreme Court held that a parolee is entitled to an explanation from the PBPP for its decision and that "the General Assembly did not intend to allow the [PBPP's] decisions . . . to evade all appellate review . . . ."  *Id.* at 474.

13

municipal approval, and then appeal from the PLCB's denial of the application under Section 464 of the Liquor Code.[25]  We agree.

---

[25] Section 464 of the Liquor Code provides for hearings involving **PLCB licensing decisions** and appeals from **PLCB actions**.  Section 464 of the Liquor Code states:

> The [PLCB] may of its own motion, and shall upon the written request of any applicant for club, hotel or restaurant liquor license . . . whose application for such license, renewal or transfer, or the renewal of an amusement permit, has been refused, fix a time and place for hearing of such application for license or for renewal or transfer thereof . . . notice of which hearing shall be mailed to the applicant at the address given in his application.  Such hearing shall be before a hearing examiner designated by the [PLCB].  At such hearing, **the [PLCB]** shall present its **reasons** for its refusal or withholding of license, renewal or transfer thereof . . . .  The applicant may appear in person or by counsel, may cross-examine the witnesses for the [PLCB] and may present evidence which shall likewise be subject to cross-examination by the [PLCB].  Such hearing shall be stenographically recorded.  The hearing examiner shall thereafter report, with the examiner's recommendation, to the [PLCB] in each case.  The [PLCB] shall thereupon grant or refuse the license, renewal or transfer thereof or the renewal of an amusement permit. . . .  If the [PLCB] shall refuse such license, renewal or transfer or the renewal of an amusement permit, following such hearing, notice in writing of such refusal shall be mailed to the applicant at the address given in his application. . . .  Any applicant who has appeared at any hearing, as above provided, **who is aggrieved by the refusal of *the* [*PLCB*]** to issue any such license or to renew or transfer any such license or to issue or renew any amusement permit may appeal . . . within twenty days from date of refusal or grant, to the court of common pleas of the county in which the premises or permit applied for is located.  **If the application is for** . . . **the intermunicipal transfer of a license**, *the governing body of the municipality* **receiving the new license or the transferred license may file an appeal of the** [PLCB] **decision granting the license, within twenty days of the date of the** [PLCB]**'s decision**, to the court of common pleas of the county in which the proposed premises is located.  Such appeal shall be upon petition of the aggrieved party, who shall serve a copy thereof upon the [PLCB], whereupon a hearing shall be held upon the petition by the court upon ten days' notice to the [PLCB]. . . .  The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved, at such time as it shall fix, of which notice shall be given to the [PLCB].  The court

Section 461(b.3) of the Liquor Code prohibits an appeal **under the Liquor Code** from a municipality's decision denying approval of an intermunicipal liquor license transfer. If Giant files an application with the PLCB without the required municipal approval, its application will be rejected as failing to comply with the Liquor Code. Any appeal Giant files under Section 464 of the Liquor Code from the PLCB's denial will address only the propriety of the PLCB's action – *i.e.*, whether the PLCB properly refused the application where municipal approval was not attached (and, as such, the PLCB action will likely be upheld). The PLCB's decision will not address the merits of the Township's refusal.

Thus, Giant need not and, in fact, must not wait for the PLCB to ministerially refuse its license application to appeal from the Township's decision. In *In re Application for Liquor License of Thomas*, 829 A.2d 410 (Pa. Cmwlth. 2003), the applicant applied for an intermunicipal transfer of a liquor license. In accordance with the former Section 461(b.3) of the Liquor Code, the receiving township held a hearing and denied the request. A hearing was held before the PLCB which remanded the matter to the township for another public hearing. Thereafter, the township passed a resolution finding that the proposed transfer would have an adverse impact on the township and denied the application. The applicant did not appeal from the township's decision denying the application but, instead, appealed from the PLCB's denial to the trial court. The trial court granted the township's petition to intervene and, thereafter, granted the township's motion to quash. The trial court determined that, pursuant to former Section 461(b.3) of the Liquor Code,

---

> shall either sustain or over-rule the **action of the** [**PLCB**] and either order or deny the issuance of a new license or the renewal or transfer of the license or the renewal of an amusement permit to the applicant.

47 P.S. § 4-464 (bold and italic emphasis added).

the applicant's appeal was required to be from the township's decision and not the PLCB's order.

> This Court concluded:
>
> The Liquor Code does not provide an applicant for an intermunicipal transfer with a choice of routes for appeal when the governing body of the receiving municipality denies the transfer. Section 461(b.3) [of the Liquor Code] provides that the appeal from a decision of the municipality denying the transfer is *directly* to the trial court. Moreover, Section 461(b.3) [of the Liquor Code] provides that a 'copy of the [municipality's] approval *must* be submitted' to the [P]LCB with the application for transfer. The plain reading of this section is that an applicant for an intermunicipal transfer must either initially obtain approval from the receiving municipality or appeal the denial of the application directly to the trial court.
>
> Section 464 of the Liquor Code . . . does provide for an appeal by the receiving municipality from a decision of the [P]LCB to the trial court for a *de novo* hearing when the [P]LCB grants an intermunicipal transfer of a liquor license. Section 464 [of the Liquor Code] does not, however, similarly provide for an appeal to the trial court from an aggrieved applicant. In fact, this section is silent as to an aggrieved applicant for an intermunicipal transfer. Thus, **reading Sections 461(b.3) and 464 [of the Liquor Code] together, the legislative intent is clear that an aggrieved party seeking an intermunicipal transfer must appeal the receiving municipality's denial of the transfer directly to the trial court and not wait until the [P]LCB ministerially denies the transfer for lack of municipal approval.**

*In re Thomas*, 829 A.2d at 414 (bold emphasis added).

Section 461(b.3) of the Liquor Code explicitly prohibits an appeal from a municipality's decision denying an intermunicipal liquor license transfer. Further, Section 464 of the Liquor Code does not afford an aggrieved applicant the right to appeal from the Township's decision denying the intermunicipal liquor license

16

transfer.[26] However, since the Township's decision is an adjudication, and Giant "must either initially obtain approval from the [Township] or appeal [from] the denial" under Section 752 of the Local Agency Law, Giant here properly appealed from the Township's decision to the trial court. *In re Thomas*, 829 A.2d at 414.

For all of the above reasons, the trial court's order is reversed, and the matter is remanded to the trial court for further proceedings in accordance with the Local Agency Law to address the merits of the Township's denial.

_____
ANNE E. COVEY, Judge

---

[26] Certainly, as explicitly recognized in *In re Thomas* and in *SSEN, Inc.*, there is no review of the **municipality's decision** under Section 464 of the Liquor Code.

17

Giant Food Stores, LLC, : 
                    Appellant : 
                        : 
        v. : 
                        :   No. 1310 C.D. 2016 
Penn Township : 

# O R D E R

AND NOW, this 18th day of July, 2017, the Chester County Common Pleas Court's June 23, 2016 order is reversed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.

        Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Giant Food Stores, LLC,        :
                Appellant     :
                           :
         v.                 :    No. 1310 C.D. 2016
                           :    Argued:  May 3, 2017
Penn Township               :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE JULIA K. HEARTHWAY, Judge

**DISSENTING OPINION**
**BY JUDGE BROBSON**               **FILED:  July 18, 2017**

       I respectfully dissent.  Under the current iteration of the Liquor Code (Code),[1] there is no express right to a favorable determination on an application to accept an intermunicipal transfer of a restaurant liquor license.  Instead, the only rights afforded under the relevant section of the Code are the rights to a public hearing on the request and a decision by the municipality within forty-five days of the request.  *See* Section 461(b.3) of the Code, *as amended*, 47 P.S. § 4-461(b.3). There is no dispute that Giant Food Stores, LLC (Giant) received both here.

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 to 10-1001.

In this appeal, Giant demands more. Giant, contending that a denial under Section 461(b.3) of the Code is an adjudication, argues that it is entitled to appeal the adverse decision to a court of common pleas under the Local Agency Law.[2] For these purposes, "adjudication" is defined, in relevant part, as follows:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

2 Pa. C.S. § 101. Unlike the majority, I do not see how Penn Township's decision to deny the intermunicipal transfer in this matter "affect[ed]" a personal or property right, privilege, immunity, duty, liability, or obligation of Giant.

After this Court's decision in *SSEN, Inc. v. Borough Council of the Borough of Eddystone*, 810 A.2d 200 (Pa. Cmwlth. 2002) (en banc), on which the majority relies, the General Assembly amended Section 461(b.3) of the Code in two material respects.[3] First, it deleted language that required municipalities to approve transfer requests unless they find "that doing so would adversely affect the welfare, health, peace and morals of the municipality or its residents."[4] In other words, the General Assembly removed the provision that afforded the applicant a right to an approval absent a finding of statutory grounds for disapproval. Second, it deleted language that expressly authorized appeals to the court of common pleas from a denial.[5] By making these changes, the General Assembly clearly intended

---

[2] 2 Pa. C.S. §§ 551-55, 571-54.

[3] Section 2 of the Act of November 29, 2006, P.L. 1421.

[4] *Id.*

[5] *See id.*

to reserve to local municipalities and their elected officials the exclusive right to either accept or reject intermunicipal transfers of liquor licenses above their allotted quota as they see fit, so long as the statutory process is followed. In doing so, the General Assembly clearly made a policy judgment that the decision to create additional outlets (*i.e.*, above what is statutorily authorized) for the purchase and sale of alcohol within a particular municipality's boundaries should lie with the local elected officials accountable directly and solely to the municipality's residents. As noted above, Giant received everything to which it was entitled under Section 461(b.3) of the Code. It received a public hearing and a timely decision. Giant is not entitled to a favorable decision. By relying on and applying *SSEN*, decided under the pre-amendment version of Section 461(b.3), the majority tacitly, and I suggest improperly, dismisses the General Assembly's subsequent legislative action as a nonevent.

Under the prior version of the Code, the applicant in *SSEN* was entitled to much more than Giant is entitled to here. The applicant in *SSEN* was not only entitled to a public hearing and a timely decision, it was entitled to an "approv[al] . . . unless" the municipality found a permitted ground for disapproval and an express right to challenge that determination in the courts of common pleas. *SSEN*, 810 A.2d at 204. Faced with these "rights," entirely absent from the current language in the Code, this Court had to determine the appropriate standard of review for the courts of common pleas. Ultimately, the Court turned to the Local Agency Law for the answer, concluding that the denial in *SSEN* was an adjudication.

Unlike the majority, however, I reason that the Court's conclusion in *SSEN* was based not on the express right to appeal found in the statute at that time,

PKB-3

but on the express right to a favorable decision *unless* the municipality found a permitted ground for disapproval. This qualified right, grounded in the source statute, was one that this Court was bound to protect zealously, as a check and balance on executive branch action. *See Bray v. McKeesport Hous. Auth.*, 114 A.3d 442 (Pa. Cmwlth. 2015) (en banc) (recognizing that applicants have a property interest in ensuring that application for relief is properly decided under standards set forth in governing law). When the General Assembly amended Section 461(b.3) of the Code, however, it removed all language that purported to create any right to a favorable decision and removed all standards against which a court could review an adverse decision for legality. In so doing, the General Assembly removed the very foundation of the Court's conclusion in *SSEN* that denials under Section 461(b.3) of the Code are adjudications subject to judicial review under the Local Agency Law.

Giant's gambit to acquire the Tredyffrin license, speculating that it would receive approval of the transfer to Penn Township, does not create a property right protected by the Local Agency Law. Describing the nature of property interests protected by due process, in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), the United States Supreme Court opined: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents*, 408 U.S. at 577. In this case, at best, Giant had "an abstract need or desire for" the transfer of the Tredyffrin license to Penn Township or "a unilateral expectation of it." It did not, however, have "a legitimate claim of entitlement to it" under the

Code. Accordingly, Giant does not have a property interest in approval of the transfer.

As a matter of law, Giant acquired only that which the law recognizes—*i.e.*, a restaurant liquor license *in Tredyffrin Township.* Penn Township's decision denying the request to transfer did not in any way adversely affect that property right. *See Guthrie v. Borough of Wilkinsburg*, 478 A.2d 1279, 1283 (Pa. 1984) (holding that employer warning letters were not adjudications appealable under Local Agency Law because, *inter alia*, "there was no concrete alteration of legal status"). Because the determination to deny Giant a transfer of the license into Penn Township did not adversely affect Giant's restaurant liquor license in Tredyffrin Township, the adverse determination is not an adjudication subject to judicial review under the Local Agency Law.

Accordingly, I would affirm the order of the Court of Common Pleas of Chester County, dated June 23, 2016, quashing Giant's appeal.

_____
P. KEVIN BROBSON, Judge

President Judge Leavitt and Judge Hearthway join in this dissenting opinion.